**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **STARLING JOHNSON, ET AL.** | ) | **Case No. 5:04CV01684** |
| | ) | |
| **Plaintiffs,** | ) | **JUDGE JOHN ADAMS** |
| | ) | |
| **v.** | ) | |
| | ) | **MEMORANDUM OPINION** |
| **GSM MANAGEMENT COMPANY,** | ) | |
| **AND WINDSOR PARK 1988, a limited** | ) | |
| **partnership dba Windsor Park Estates,** | ) | |
| **Defendant.** | ) | |

Plaintiffs,[1] Starling and Shenita Johnson, and the Fair Housing Advocates Association,  bring this action under the Fair Housing Act (FHA), 42 U.S.C. § 3601, *et seq*., 42 U.S.C. §1981, and 42 U.S.C. § 1982.  Plaintiffs claim that defendant, GMS Management Company and Windsor Park 1988, a limited partnership dba Windsor Park Estates, discriminated against the individual plaintiffs on the basis of race and familial status by interfering with their right to lease an apartment.

Pursuant to Fed. R. Civ. P. 12(b)(1) & (6), defendant has moved to dismiss Plaintiffs' First Amended Complaint, maintaining that  the Court lacks subject matter jurisdiction over the family status claim and that the remaining claims are barred by either the governing statute of limitations or by the doctrines of administrative issue and claim preclusion. (Docket No. 23).   Defendant also argues that the association plaintiff lacks standing to participate in this action.

---

[1]The term "plaintiffs" will be used to refer to the individual and association plaintiffs collectively.  Where it is necessary to distinguish between the individual and association plaintiffs, the terms "individual plaintiffs" and "association plaintiff" shall be employed.

For the reasons that follow, defendant's motion to dismiss is granted.  All claims are hereby dismissed as untimely.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

To fully understand the issues raised herein, it is necessary to review the factual and tortured procedural history that proceeded the present dispositive motion.  Individual plaintiffs, both African American, entered into a lease agreement with defendant for the rental of a condominium in a building maintained and managed by defendant.  Individual plaintiffs allege that, during the time in which they lived in defendant's building, defendant discriminated against them and their minor children on the basis of race and familial status by harassing their children and falsely accusing the children of engaging in unlawful activity.  Plaintiffs also challenge defendant's written rules that restricted the use of the building's swimming pool and workout facility by minor children.  It is the contention of the individual plaintiffs that this discrimination continued until June 20, 2002, when the individual plaintiffs left defendant's building.

On August 21, 2002, agency plaintiff  filed a charge of discrimination with the Ohio Civil Rights Commission (OCRC). (Docket No. 5, Exh. A).  In an affidavit accompanying the charge, individual plaintiffs alleged that defendant discriminated against them on the basis of race and familial status. (Docket No. 5, Exh. A).  On May 12, 2003, the OCRC determined that probable cause for discrimination existed solely with regard to the written rules which restricted minor children in their enjoyment of the swimming pool and the workout facility. (Docket No. 5, Exh. B).  The OCRC found no probable cause with respect to the remaining claims of race and familial harassment.  On August 21, 2003 agency plaintiff caused a Complaint and Notice of Hearing Election to be issued against defendant pursuant to Ohio Rev. Code § 4122.05(B)(3) solely on the issue of family status

2

discrimination relating to defendant's written rules. (Docket No. 5, Exh. C).  Agency plaintiff later advised the Ohio Civil Rights Commission of its election to proceed by filing a civil action in state court pursuant to § 4112.051(A)(1) and (2).  In response to this election, the OCRC issued an order dismissing the administrative complaint. (Docket No. 5, Exh. D).

On May 12, 2004, the OCRC filed a Complaint in the Summit County Court of Common Pleas pursuant to § 4112.051. (Docket No. 5, Ex. E).  Like the prior administrative complaint, the state action was restricted to the family status discrimination that allegedly resulted from defendant's written rules.  It is clear from the state complaint that the individual plaintiffs were not parties to the state court action.

Plaintiffs filed the present federal action on August 20, 2004.  Relying solely on the FHA, 42 U.S.C. § 3601, *et seq.*, plaintiffs' original complaint raised both issues of race and familial discrimination.  On October 5, 2004, defendant filed its first motion to dismiss plaintiffs' complaint. (Docket No. 5).   In its motion, defendant maintained that the pending state court action prevented this Court from exercising subject matter jurisdiction over the dispute, that the race and family status claims were time-barred, and that the race claim was also barred by the doctrine of administrative claim preclusion.

Before the first motion was fully briefed, plaintiffs filed their First Amended Complaint. (Docket No. 17).  In the amended complaint, filed December 21, 2004, plaintiffs raised, for the first time, claims of racial discrimination under 42 U.S.C. §§ 1981 and 1982.  Plaintiffs also claimed that defendant had engaged in "a pattern and practice of racial discrimination."  Prior to filing the amended complaint, individual plaintiffs caused the state court action to be dismissed. (Docket No. 9, Exh. 1).

3

On December 21, 2004, defendant filed the present motion to dismiss plaintiffs' amended complaint. (Docket No. 23).  Plaintiffs filed a memorandum in opposition, and defendant filed a reply. (Docket Nos. 32 and 33, respectively).  All discovery has been stayed pending disposition of defendant's motion.

## II.  <u>STANDARD OF REVIEW</u>

Defendant brings the present motion under Fed. R. Civ. P. 12(b)(1) & (6).  There are two general categories into which Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction fall: facial attacks and factual attacks.  Fed. R. Civ. P. 12(b)(1); *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994), *cert. denied*, 513 U.S. 868 (1994).  A facial attack challenges the sufficiency of the pleading itself.  On such a motion, the Court must take all of the material allegations in the complaint as true and construe them in the light most favorable to the nonmoving party.  *Id.*, *citing Scheuer v. Rhodes,* 416 U.S. 232, 235-37 (1974).  In contrast, a factual attack, as is made here, challenges the factual existence of subject matter jurisdiction.

On this form of motion, the Court's inquiry is limited to determining whether the challenged pleadings set forth allegations sufficient to show the Court that it has jurisdiction over the subject matter; "no presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* (internal citations omitted); *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1135 (6th Cir. 1996).  In reviewing such a motion, a district court is to probe the facts and assess the validity of its own jurisdiction.  In doing so, the Court has wide discretion to consider affidavits and documents outside the complaint, and may even conduct a limited evidentiary hearing if necessary. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).  In connection with this analysis, the plaintiff

4

bears the burden of demonstrating that the Court has and may appropriately exercise jurisdiction over the subject matter. *RMI Titanium Co.*, 78 F.3d at 1134.   The Court may examine evidence of its power to hear a case, and must make any factual findings necessary to determine whether it has jurisdiction. *Kroll v. United States*, 58 F.3d 1087, 1090 (6th Cir. 1995); *Rogers v. Stratton Inds., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986).

In deciding a motion to dismiss under Rule 12(b)(6), the Court must take all well-pleaded allegations in the complaint as true and construe those allegations in a light most favorable to the plaintiff. *Dana Corp. v. Blue Cross & Blue Shield Mut.*, 900 F.2d 882 (6th Cir. 1990); *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 489 (6th Cir. 1990).  However, the Court need not accept as true a legal conclusion couched as a factual allegation.  *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  A well-pleaded allegation is one that alleges specific facts and does not merely rely upon conclusory statements.  The Court is to dismiss the complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

Plaintiffs contend, however, that defendant has converted its motion to dismiss into a motion for summary judgment by referring to documentation from the proceedings before the Ohio Civil Rights Commission.   It is well settled, however, that the Court may take judicial notice of administrative proceedings in resolving a motion under Rule 12(b)(6). *See New England Health Care Emples. Pension Fund v. Ernst & Young*, 336 F. 3d 495, 501 (6th Cir. 2003).   Moreover, a federal court is free to examine any undisputedly authentic documents attached to the pleadings, along with matters of public record, to satisfy itself of its jurisdiction without converting a Rule 12(b)(1) motion into a Rule 56 motion. *Rogers*, 798 F.2d at 915.  Here, the Court may consider the documents from

5

the OCRC, the agency plaintiff's investigation, and the record from the state court in resolving this motion.

### III.  DISCUSSION AND LAW

### A.  Subject Matter Jurisdiction

At the outset, the Court must resolve the issue of subject matter jurisdiction.  Defendant argues that plaintiffs elected to have the FHA claim of family status discrimination addressed in state court pursuant to Ohio Rev. Code § 4112.051.  According to defendant, this election precludes the Court from exercising jurisdiction over the family status claim.

In support of its argument, defendant relies exclusively on the decision in *Mitchell v. Cellone,* 29 F. Supp. 2d 368 (W.D. Pa. 2003).  In *Mitchell*, the plaintiffs filed a housing discrimination charge with the state administrative agency.  The plaintiffs elected to have the matter decided in state court, and a complaint was filed on their behalf.  When the state court denied the plaintiffs the opportunity to intervene, they caused the state action to be dismissed and filed in federal court.

The district court concluded that the plaintiffs' election under 42 U.S.C. § 3613 to proceed in state court robbed it of jurisdiction.  Section 3613(a)(1) of the FHA provides:

> An aggrieved person may commence a civil action in an appropriate United States district court or State court no later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice, or the breach of a conciliation agreement entered into under this subchapter, whichever occurs last, to obtain appropriate relief with respect to such discriminatory housing practice or breach.

Finding that the FHA provided for only one election, the district court refused to allow  the plaintiffs a second one. *Mitchell,* 29 F. Supp. 2d at 376.

What defendant failed to mention, however, is the fact that the Third Circuit reversed the decision in *Mitchell* prior to the filing of defendant's original motion. *See Mitchell v. Cellone*, 291

6

F. Supp. 2d 368, *rev'd*, 389 F. 3d 86 (3rd Cir. 2004).  In so ruling, the Third Circuit specifically rejected the analysis relied on by the district court and defendant.

On appeal, the court focused its analysis on the two types of enforcement mechanisms available under the FHA: administrative enforcement under 42 U.S.C. § 3610, and private enforcement under § 3613.  Under § 3610, an aggrieved person may file an administrative complaint with the Secretary of Housing and Urban Development (HUD).  By its terms, the Secretary of HUD is required to refer the complaint to the appropriate state agency.  Alternative, § 3613 allows for a civil action in either State or Federal court within two years, whether or not an administrative complaint has been filed under § 3610.

The Third Circuit found that the plain language of §§ 3610 and 3613 provides for a dual enforcement scheme that allows an aggrieved person to pursue both avenues until such time as either avenue has reached a final resolution. *Mitchell*, 389 F. 3d at 91.  Moreover, the court noted that the legislative history of the FHA supported a determination that the decision to file with HUD would not preclude a subsequent decision to litigate privately. *Id.*  Finding that the state court action was merely the culmination of the administrative process under § 3610, the court held that the plaintiffs' state court action did not constitute an election to litigate privately under § 3613. *Id.*

The Court finds the reasoning of the Third Circuit persuasive.  The action filed in Summit County by the OCRC was nothing more than the culmination of the administrative process.  As such, it did not constitute the individual plaintiffs' election under § 3613 to litigate privately.  Indeed, defendant has not identified any authority that would deny federal jurisdiction under the FHA simply because an administrative charge resulted in a state court action; especially where those seeking federal redress were not parties to the state action and the action was dismissed before a final

7

adjudication.  Consequently, the Court finds that it has jurisdiction to entertain plaintiffs' family status claim under the FHA.

### B.  Standing of FHAA

Defendant challenges agency plaintiff's standing to assert claims under 42 U.S.C. §§ 1981 and 1982.  Defendant acknowledges that the FHA confers broad standing upon individual associations that extends to the full limits of Article III.  *See Havens Realty Corp. v. Coleman,* 455 U.S. 363, 372  (1982); *Trafficante v. Metropolitan Life Insurance Co.*, 409 U.S. 205, 209 (1972). It argues, however, that standing under the Civil Rights Act of 1866 is much more limited.  *See Warth v. Seldin*, 422 U.S. 490, 512-14 (1975).

"Unlike the Fair Housing Act, Section 1981 and 1982 do not create a statutory right which confers standing even when plaintiff would otherwise have no judicially cognizable injury. Therefore, the Court is not required to extend standing under Sections 1981 and 1982 to the full limits of Article III and may invoke prudential limitations." *Saunders v. General Services Corporation*, 659 F. Supp. 1042, 1054 (E.D. Va 1987).  *See Warth*, 422 U.S. at 513-14.   These limitations include declining to exercise jurisdiction where the injury is a "generalized grievance" shared by a large class of citizens or where a plaintiff rests his claims on the rights of third parties. *Saunders*, 659 at 1054. *See Warth*, 422 U.S. at 499.

It is not disputed that agency plaintiff has sufficiently plead facts that support a finding that it has suffered an injury in fact by virtue of the fact that it has expended resources in investigating the alleged racial discrimination of defendant. (Plaintiffs' First Amended Complaint at para. 36). Such a showing is sufficient to confer standing under the FHA.  *See Hooker v. Weathers*, 990 F.2d 913 (6th Cir. 1993).

8

The Court finds, however, that prudential concerns warrant a determination that the agency plaintiff lacks standing under 42 U.S.C. §§ 1981 and 1982 inasmuch as agency plaintiff relies solely on the interests of third parties in bringing these claims. *See eg., Saunders,* 659 F. Supp. at 1054 (While the court found agency standing under the FHA, it found no standing under 42 U.S.C. §§ 1981 and 1982 because the agency's rights had not been violated). Moreover, there is no evidence that individual tenants that have been victimized by defendant's alleged discrimination are unable to protect their own interests. Indeed, individual plaintiffs' involvement in the present lawsuit belies agency plaintiff's allegation that it is the only effective adversary of defendant. (Plaintiffs' First Amended Complaint at para. 33). *See Maryland Minority Contractor's Association, Inc. v. Maryland Stadium Authority*, 70 F. Supp. 2d 580 (D. Md 1998). As such, agency plaintiff has standing solely with respect to the race and family status claims under the FHA.

### C. **Administrative Preclusion**

Returning to the administrative proceedings, defendant argues that the OCRC's May 22, 2003 determination that "no probable cause" existed for a finding that it had engaged in racial discrimination or harassment of individual plaintiffs' children bars plaintiffs' race claims under the FHA and 42 U.S.C. §§ 1981 and 1982.[2] It is defendant's position that plaintiffs' failure to seek administrative review of that decision subjects these claims to common law administrative preclusion.

In general, issue preclusion forecloses relitigation of law or fact actually litigated and decided

---

[2]The OCRC also determined that, with the exception of defendant's written rules limiting minor children's access to certain building facilities, there was no probable cause to believe that defendant had discriminated against individual plaintiffs on the basis of family status. *See* Docket No. 5, Exh. B.

9

in a prior judicial action. *Black v. Ryder/P.I.E. Nationwide, Inc.,* 15 F.3d 573, 582 (6th Cir. 1994).

*See  La Preferida, Inc. v. Cervecedia Modelo*, 914 F.2d 900, 905 (7th Cir. 1990); *Barns v. McDowell*,

848 F.2d 725, 729 (6th Cir. 1988).  Under claim preclusion, a final judgment on the merits of a

judicial action precludes the parties from relitigating claims that were or could have been raised in

that action.  *Black,* 15 F.3d at 582*; Barnes,* 848 F.2d at 729.

In certain circumstances, federal courts have been willing to extend the concept of preclusion

to  unreviewed administrative determinations.  *See University of Tennessee v. Elliot,* 478 U.S. 788,

799 *(1986); United States v. Utah Construction & Mining Co.,* 384 U.S. 394, 422 (1966). *See eg.,*

*Davet v. City of Cleveland*, 456 F.3d 549 (6th Cir. 2006).  Indeed, giving preclusive effect to an

administrative agency judgment serves to preserve the integrity of administrative adjudications.

*Allahar v. Zahora,* 59 F.3d 693, 696 (7th Cir. 1995).  Because the doctrine of preclusion does not

apply to all federal statutes, however, an inquiry is necessary to determine if the statutes at issue are

subject to administrative preclusion. *See Waid v. Merrill Area Public Schools*, 91 F. 3d 857, 864 (7th

Cir. 1996).

Upon such an inquiry, courts have determined that claims brought under the FHA are subject

to administrative preclusion.[3]  *See Sokoya v. Clarendon Condo Association*, 1996 U.S. Dist. LEXIS 17879 (N.D. Ill.); *Ward v. Harte*, 794 F. Supp. 109 (S.D.N.Y. 1992).  Actions under 42 U.S.C. §§ 1981 and 1982 may also be subjected to preclusion. *University of Tennessee v. Elliot*, 478 U.S. 788 (1986).[4]

In *Elliot*, the Supreme Court articulated the rule to be employed in determining whether an agency's decision is to be given preclusive effect.  Specifically, the *Elliot* Court held:

> when a state agency 'acting in a judicial capacity...resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' federal courts must give the agency's fact-finding the same preclusive effect to which it would be entitled in the State's courts. *Elliot*, 478 U.S. at 799 (internal quote omitted).

An agency acts in a judicial capacity when it provides the following safeguards: the opportunity for representation by counsel, pretrial discovery, the opportunity to present memoranda of law, examination and cross-examinations at a hearing, the opportunity to introduce exhibits, the chance to lodge objections to evidence, and final findings of fact and conclusions of law. *Reed v.*

---

[3]In *Ward v. Harte*, 794 F. Supp. 109 (S.D.N.Y. 1992), the court offered three reasons why administrative decisions under the FHA can have preclusive effect.  First, the court noted that the enforcement structure of the FHA was significantly different from that of either Title VII or the Age Discrimination in Employment Act (ADEA) in that a plaintiff need not pursue administrative remedies before filing a suit under the FHA. *Id.* at 113.  *See also Sokoya v. Carendon Condo Association*, 1996 U.S. Dist. LEXIS 17879 (N.D. Ill).  Second, the administrative enforcement mechanism expressly requires the Secretary of HUD to defer to the appropriate state or local agency. *Ward,* 794 F. Supp. at 113.  Third, in a 1988 amendment to the FHA, Congress specifically provided that one type of determination–a finding of non-compliance with a mandate to make premises more accessible to handicapped persons–was not to have conclusive effect. *Id. See* 42 U.S.C. § 3604(f)(6)(B).

[4]In *Elliot*, the Supreme Court explained that actions under the Reconstruction civil rights laws, such as 42 U.S.C. §§ 1981 and 1982, are subject to administrative preclusion because there is nothing in the language or the legislative history of these laws that expresses any congressional intent to contravene the common-law rules of preclusion. *Elliot*, 478 U.S. at 799.

11

*Amax Coal Company*, 971 F. 2d 1295, 1300 (7th Cir. 1992). Where these safeguards have been provided at the administrative level, and the parties have been given a full and fair opportunity to litigate the issues, federal courts have dismissed subsequent claims. *See eg., Lamb v. Citibank*, 1994 U.S. Dist. LEXIS 12930 (S.D.N.Y) (employee's claims under Title VII and 42 U.S.C. § 1981 were precluded where the plaintiff gave two days of testimony before the administrative determination was rendered); *Ward,* 794 F. Supp. at 115-118 (FHA and 42 U.S.C. §§ 1981 and 1982 claims subject to administrative preclusion where the defendant was represented by counsel, testified on his own behalf, and was offered the opportunity to present evidence).

Contrary to the cases cited above, the record before this Court is devoid of evidence regarding the nature and extent of the proceedings before the OCRC. Based on the record, which includes the exhibits attached to the amended complaint and the pleadings, it is unclear whether the OCRC truly acted in a judicial capacity or whether individual plaintiffs were afforded a full and fair opportunity to litigate the issues. Specifically, the record does not show whether individual plaintiffs were actually given the opportunity to testify, examine witnesses, or offer evidence. Moreover, in its administrative complaint, the OCRC refers to its own investigation as "preliminary." (Docket No. 5, Exh. C). Absent a more convincing showing on the record, the Court is reluctant to give preclusive effect to the OCRC's determination.

### D. <u>Statute of Limitations</u>

In its original motion to dismiss, defendant argued that plaintiffs' FHA claim was time-barred under the two year limitations period set forth in 42 U.S.C. § 3613(a)(1)(A). Specifically, defendant noted that the last possible date of discrimination, as set forth in the original complaint, was June 20, 2002, the date individual plaintiffs vacated defendant's building. Since plaintiffs filed the original

12

complaint on August 20, 2004, more than two years after the last date of discrimination, defendant maintained that the claim was time-barred.  Defendant renews its argument that plaintiffs' FHA claim is time-barred.  Defendant also argues that plaintiffs' claims under 42 U.S.C. §§ 1981 and 1982, which were added in the amended complaint, are untimely.

### 1. Continuing Violation

After defendant challenged the timeliness of plaintiffs' FHA claim, plaintiffs responded by filing an amended complaint.  Plaintiffs argue that, through their amended complaint, they have invoked the doctrine of continuing violation by pleading allegations that defendant engaged in a pattern and practice of discrimination. Plaintiffs' Opposition Brief at 6; Plaintiffs' First Amended Complaint at para. 21.  In support of these allegations, plaintiffs rely upon testimony from an individual employed by defendant who claimed that two of defendant's employees had engaged in discrimination against African-American families until they left defendant's employ in  November, 2002.[5] (Docket No. 9, Exh. 1).  It is plaintiffs' position that these allegations support a finding that defendant engaged in a continuing course of conduct that continued into the limitations period, rendering all of plaintiffs' claims timely.

Under the FHA, a civil actions must be filed "no later than 2 years after the occurrence or the termination of an allegedly discriminatory housing practice." 42 U.S.C. § 3613(a)(1)(A).  The Supreme Court has recognized, however, that in the context of the FHA, continuing violations "should be treated differently than one discrete act of discrimination," so that the complaint is timely when the last asserted occurrence of the pattern falls within the statute of limitations. *Havens v. Realty Corp.*

_____

[5]A written transcript, which was prepared from the phone interview between FHAA's Vincent B. Curry and defendant's employee, Holly Wilson, was attached to Plaintiffs' original opposition brief.  (Docket No.9, Exh. 1).

*v. Coleman*, 455 U.S. 363, 380-81 (1982).  *See also Dixon v. Toki*, 928 F. 2d 212 (6th Cir. 1991); *Hargraves v. Capital City Mortgage Corp.*, 140 F. Supp. 2d 7 (D.D.C. 2000), *modified* at 147 F. Supp. 2d 1 (D.D.C. 2001).

While the existence of a continuing violation eliminates the concern over the staleness of old claims, the doctrine of continuing violation is not available to rescue an otherwise untimely claim by merely labeling the acts as "continuing." *Velazquez v. Salas*, 576 F. Supp. 476, 478 (D. Puerto Rico 1983).  Thus, to successfully set forth a claim of a continuing violation, a plaintiff must do more than offer subjective characterizations or state conclusions; the plaintiff must set forth specific facts that support a finding of a continuing course of conduct. *Id.*

The Sixth Circuit recognizes two general types of continuing violations.  The first category "arises when there is some evidence of present discriminatory activity giving rise to a claim of a continuing violation..." *Dixon,* 928 F.2d at 216. "[T]his category requires a 'current' as well as 'continuing' violation: at least one of the forbidden discriminatory acts must have occurred within the relevant limitations period." *Id.*

The second type of "continuing violation" results from the existence of a long standing policy of discrimination. *Dixon*, 928 F.2d  at 217.  "Unrelated incidents of discrimination will not suffice to invoke this exception; rather, there must be a continuing 'over-arching policy of discrimination.'" *Id.*, *quoting Janikowski v. Bendix Corp.*, 823 F. 2d 945, 948 (6th Cir. 1987).

Plaintiffs attempt to invoke the second category of continuing violation by maintaining that defendant engaged in a pattern and practice of discrimination.  *See* Plaintiffs' First Amended Complaint at para. 21.  In support of this contention, plaintiffs offer the transcript from agency plaintiff's phone interview with the employee who had previously supervised the building where

14

individual plaintiffs lived.  Viewing the record, including the amended complaint and the interview transcript, in the light most favorable to plaintiffs, the Court finds that plaintiffs have failed to set forth a claim for a continuing violation.

In her interview, the supervisor represented that she was aware that two employees under her were discriminating against unnamed tenants and prospective tenants on the basis of race and family status.  Without identifying any specific incidents, she also claimed that these two individuals exhibited a bias against renting to minorities and harassed minority children.  She also stated that she heard these employees using racial slurs.  The supervisor believed that these individuals continued to engage in this behavior until they left defendant's employ in November, 2002.

Such generalized claims of discrimination are simply insufficient to establish that defendant had an over-arching policy of discrimination.  *See Valezquez*, 576 F. Supp. at 478.  Moreover, it is unclear whether these employees were ever in positions of management and could have been considered to have acted on behalf of defendant.  Even at the pleadings stage, more is required before a court will employ a doctrine which extends the life an otherwise stale claim.

Even if plaintiffs had been able to establish the existence of a policy of discrimination, absent a specific allegedly discriminatory act against individual plaintiffs within the limitations period, the "mere existence of an alleged policy of violating equal protection rights will not toll the running of the statute of limitations."  *Dixon*, 928 F.2d  at 217.  *See Colin v. Blanchard*, 890 F.2d 811, 815 (6th Cir. 1989).  Because plaintiffs cannot point to any incidents involving individual plaintiffs during the limitation period, plaintiffs are not entitled to have the limitations period tolled.

To rule otherwise would do injustice to the purpose of the continuing violation doctrine, which is to protect victims of discrimination who do not recognize violations as actionable until future events

15

demonstrate a pattern. *See Hargraves*, 140 F. Supp.2d at 25.  Plaintiffs were aware of their potential claims at the time of the alleged discrimination, as evidenced by the timely filing of the administrative charge.  Plaintiffs will not be permitted to benefit from unrelated activity that made its way into the record only after defendant challenged the timeliness of plaintiffs' claims.  As such, each claim will be subject to the applicable statute of limitations.

### 2.  Timeliness of FHA Claim

As previously stated, claims under the FHA must be brought "not later than two years after the occurrence or the termination of an alleged discriminatory housing practice..." 42 U.S.C. § 3613(a)(1)(A).  It is undisputed that individual plaintiffs vacated defendant's building on or before June 20, 2002.  Consequently, the FHA claim, which was filed more than two years after the last possible date of discrimination, is time-barred.[6]

### 3.  Timeliness of Claims under 42 U.S.C. §§ 1981 and 1982

In their amended complaint, plaintiffs also raise claims under 42 U.S.C. §§ 1981 and 1982. While Plaintiffs' First Amended Complaint marked the introduction of these two statutes into this litigation, the claims were based on the same set of facts supporting plaintiffs' racial discrimination claims under the FHA.  Like the FHA claim, the claims brought under the Civil Rights Act of 1866 are time-barred.

Section 1982 provides a separate, private right of action for victims of housing discrimination. *Warner v. Perrino*, 585 F.2d 171 (6th Cir. 1978).  Specifically, § 1982 protects the rights of all citizens

---

[6]Plaintiffs do not maintain that the filing of the administrative charge with the OCRC tolled the running of the limitations period under 42 U.S.C. § 3613(a)(1)(B).  *See eg., Sternjohn v. Kreisler*, 238 F. Supp. 2d 1104 (D. Minn. 2003).  There is no provision in Ohio's fair housing statutes which provides for tolling the time period under these circumstances. *See Warner v. Perrino,* 585 F. 2d 171, 175 (6th Cir. 1978).

16

to "inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982.

Even broader in scope is § 1981, which protects the rights of all citizens to "make and enforce

contracts." 42 U.S.C. § 1981

Neither statute includes any limitation on the time period within which an action must be

brought.  Where Congress has not provided for such time limits, the Court must turn to Ohio state law

for the most analogous statute of limitations.  *See Runyon v. McCray*, 427 U.S. 160, 180 (1976).  In

the present case, the most analogous state statute is Ohio's Fair Housing Act, Ohio Rev. Code  §

4112.02(H).  *See Sutton v. Bloom*, 710 F.2d 1188 (6th Cir. 1983); *Warner*, 585 F.2d at 174.  Ohio

Revised Code § 4112.02(H)(4) provides that it shall be unlawful to:

> [d]iscriminate against any person in the terms and conditions of selling, transferring, assigning,
> renting, leasing, or subleasing any housing accommodation or in furnishing facilities, services,
> or privileges in connection with the ownership, occupancy, or use of any housing
> accommodation...because of race, color, religion, sex, familial status, ancestry, disability, or
> national origin or because of the racial composition of the neighborhood in which the housing
> accommodations are located.

Pursuant to § 4112.051(A)(2), any action brought under § 4112.02(H) must be brought within one year

of the alleged discriminatory activity.

The last date that plaintiffs allege that individual plaintiffs were subjected to any racially

discriminatory behavior was June 20, 2002.  Because plaintiffs' claims under 42 U.S.C. §§ 1981 and

1982 were filed more than one year after this date, these claims are untimely.[7]

### 4. **Application of 28 U.S.C. § 1981**

---

[7]Even if the Court was to have accepted plaintiff's continuing violation theory, their claims
under §§ 1981 and 1982 would still have been time-barred. In Plaintiffs' First Amended Complaint,
plaintiffs allege that agency plaintiff's investigation revealed evidence of alleged discriminatory
practices that continued until November 17, 2003. (First Amended Complaint at para. 10). Even
applying this later date, plaintiffs' civil rights claims are untimely.

17

Plaintiffs argue that the four-year statute of limitations, found in 28 U.S.C. § 1658(a), should apply to their claims under 42 U.S.C. § 1981.  The federal "catch-all" statute, 28 U.S.C. § 1658, provides for a four-year statute of limitations for actions arising under federal statutes enacted after December 1, 1990 that do not include a limitations provision.  It is not disputed that 42 U.S.C. § 1981 was enacted in 1866.  Plaintiffs represent, however, that the 1991 Civil Rights Act, which amended § 1981, constituted a post-1990 federal statutes that qualifies for treatment under 28 U.S.C. § 1658.

In support of their argument, plaintiffs rely on the ruling in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004).  The *Jones* Court applied the federal catch-all statute to the plaintiffs' employment claims for hostile work environment, wrongful termination, and failure to transfer brought under § 1981. *Jones*, 491 U.S. at 1846.  The court noted that, prior to the enactment of the 1991 Amendments to the Civil Rights Act of 1866, employees could not maintain claims for alleged racial misconduct under § 1981 occurring *after* the date of hire.  *See Patterson v. McLean Credit Union*, 491 U.S. 164 (1989).  In response to *Patterson*, Congress passed the 1991 Amendments to the Civil Rights Act of 1866 to clarify that the term "make and enforce contracts" included the "the termination of contracts and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).  Because the employees' alleged violations of the amended statute, and the amendments made the employees' claims of racial harassment possible, the claims arose under a post-1990 statute. *Jones,* 491 U.S. at 1845-46. As such, the court ruled that the catch-all statute of limitations applied to the employees' claims.  *Jones*, 491 U.S. at 1846.

While plaintiffs argue that the 1991 amendments made their § 1981 claim possible, their amended complaint did not invoke these amendments.  The language of the amended complaint makes

18

clear that the § 1981 claim is brought under the pre-1990 version of the Civil Rights Act of 1866.

Specifically, paragraph 27 of amended complaints provides that:

> In relevant part, 42 U.S.C. § 1981 states that all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens...

Paragraph 28 provides:

> The actions and conduct of these Defendants as well as the individual employees, agents, representatives of these Defendants and acting on its behalf perpetrated illegal racial discrimination against Plaintiffs Johnson in violation of 42 U.S.C. § 1981 and deprived them to their detriment and damage of their right to make and enforce contracts which is the right of all persons regardless of color.

The Court notes, however, that even if plaintiffs had properly invoked the catch-all provision in 28 U.S.C. § 1658, it would not have rescued their claim under 42 U.S.C. § 1981.  Plaintiffs did not bring a claim under § 1981 until after defendant challenged the timeliness of plaintiffs' FHA claim. Although § 1981 speaks broadly of contract rights and is wider in scope than the FHA or Ohio's fair housing statute at Ohio Rev. Code § 4112.02(H), the conduct at issue here involves only the allegations of housing discrimination originally plead as a claim under the FHA.  The only advantage plaintiffs could have hoped to gain by raising a claim under 42 U.S.C. § 1981 was the opportunity to escape the statute of limitations that govern fair housing claims under the FHA and Ohio State law. To permit plaintiffs to do so would be to render meaningless these valid limitations.  *See eg., Warner*, 585 F. 2d at 175 (tenant not permitted to plead housing claims under § 3617 of the FHA and 42 U.S.C. § 1982 as a means to avoid the six month statute of limitations that would have applied to a claim under Ohio law or § 3604 of the FHA).

### IV.  CONCLUSION

For the foregoing reasons, defendant's motion to dismiss plaintiffs' First Amended Complaint

19

is granted.  This case is dismissed.


**IT IS SO ORDERED**.


  September 28, 2006                                      s/John R. Adams
Date                                                     John R. Adams
                                                         U.S. District Judge


20